UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

HERMAN MENES
    Plaintiff

  v.

CITY UNIVERSITY OF NEW YORK-HUNTER
COLLEGE, SHARON NEILL, THERESA MATIS,
LIVIA CANGEMI, LAURA SCHACTER, ROBERT
MCGARRY, and TAMARA GREEN,
individually and in their official capacities,
    Defendants
_____

AMENDED
COMPLAINT
and JURY DEMAND

Dkt. No. 06 cv 6358 (RJH)

    Plaintiff, by his attorney, Aaron David Frishberg, complaining of the acts of Defendants, states as follows:

## JURISDICTION

1.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1343, to redress violations of civil rights. This Court has pendant jurisdiction over Plaintiff''s state law claims.

## VENUE

2.    Venue is properly laid in the Southern District of New York, where Plaintiff was and is employed by Defendant CUNY-HUNTER COLLEGE, and where the acts complained of occurred.

## PARTIES

3.    Plaintiff is a citizen of the United States and a resident of New York. At all times mentioned herein, Plaintiff has been an employee of Defendant CUNY-HUNTER COLLEGE.

4.    At all times mentioned herein, Plaintiff has been a person with a disability under the Americans with Disabilities Act, and under the Rehabilitation Act of 1973, in that he is significantly limited by a mental disability, depression and anxiety, in comparison to the average person in the major life functions of working and learning. At times, when under excessive stress at work, Plaintiff's disability has required him to miss days of work intermittently or for several weeks. Plaintiff is a person who is otherwise qualified to perform the essential functions of his employment, in that, with a reasonable accommodation, he can perform the essential functions of his job competently and satisfactorily.

5.  At all times mentioned herein, CUNY-HUNTER COLLEGE has been an employer within the meaning of 42 U.S.C. § 2000e, et seq., the Equal Employment Opportunity Act of 1972, and upon information and belief, has been an employer of more than five-hundred employees. At all times mentioned herein, CUNY-HUNTER COLLEGE has been a senior college of the CITY UNIVERSITY OF NEW YORK, organized as a public college under the laws of New York.

6.  At all times mentioned herein Defendant SHARON NEILL was the Business Manager of CUNY-HUNTER COLLEGE, and was in charge of the areas to which Plaintiff was assigned to work, and was the person to whom his immediate supervisors, first THERESA MATIS, and then LIVIA CANGEMI, reported directly. At all times mentioned herein, Defendant SHARON NEILL acted as an agent and employee of Defendant CUNY-HUNTER COLLEGE.

7.  At all times mentioned herein until on or about August 31, 2005, Defendant THERESA MATIS was Plaintiff's supervisor at CUNY-HUNTER COLLEGE. At all times mentioned herein, Defendant THERESA MATIS acted as an agent and employee of Defendant CUNY-HUNTER COLLEGE.

8.  At all times mentioned herein after on or about September 1, 2005 Defendant LIVIA CANGEMI has been Plaintiff's supervisor at CUNY-HUNTER COLLEGE. At all times mentioned herein, Defendant LIVIA CANGEMI acted as an agent and employee of Defendant CUNY-HUNTER COLLEGE.

9.  At all times mentioned herein, Defendant ROBERT MCGARRY has been the Director of Human Resources at CUNY-HUNTER COLLEGE. At all times mentioned herein, Defendant ROBERT MCGARRY acted as an agent and employee of Defendant CUNY-HUNTER COLLEGE.

10. At all times mentioned herein, Defendant LAURA SCHACTER has been the Dean for Diversity and Compliance at CUNY-HUNTER COLLEGE, and as such has been charged with investigating and remedying employment discrimination at CUNY-HUNTER COLLEGE. At all times mentioned herein, Defendant LAURA SCHACTER acted as an agent and employee of Defendant CUNY-HUNTER COLLEGE.

11. At all times mentioned herein, Defendant TAMARA GREEN has been the Director of 504/ADA compliance at CUNY-HUNTER COLLEGE and as such, has been responsible for the provision of reasonable accommodations to employees with disabilities at CUNY-HUNTER COLLEGE. At all times mentioned herein, Defendant TAMARA GREEN acted as an agent and employee of Defendant CUNY-HUNTER COLLEGE.

FACTS

As a First Cause of Action

12.     In or about March, 2005, Plaintiff complained to Defendant THERESA MATIS that Tom Crowfis, one of his supervisors prominently displayed Christian religious objects, including figurines of angels and wall hangings, in the Bursar's office of CUNY-HUNTER COLLEGE.

13.     Plaintiff told Defendant MATIS, that he felt the display of religious objects in common areas at a public institution was inappropriate, and that he had overheard some Jewish students voicing their discomfort with these displays.

14.     Plaintiff also observed that many observant Muslim students attend CUNY-HUNTER COLLEGE, but that there were few or none working in the Bursar's office where Crowfis was in charge of the work study assignments.

15.     Defendant MATIS spoke to Defendant SHARON NEILL, who directed that the religious objects be removed from the parts of the Bursar's office accessible to students who came to the office windows, but not from the work area, which students also observe and enter.

16.     At a meeting with Defendants SHARON NEILL and THERESA MATIS on or about June 20, 2006, Plaintiff again voiced his concern with the display of Christian religious objects in the work area.  Defendants NEILL and MATIS again declined to do anything about these displays.

17.     A committee of which Tom Crowfis was a longtime member organized the annual holiday party for around the Christmas holiday, which party was held on CUNY-HUNTER COLLEGE's premises.

18.     Until Plaintiff complained about the practice, in or around 2005, the party had been denominated a "Christmas party." Persons who attended the party were required to contribute to it, until in or around 2005.

19.     In 2005, because of complaints about the policy of charging admission, the President of CUNY-HUNTER COLLEGE agreed to allow attendance without contribution. However, having kept a list of the persons who had paid to attend in past years, the committee organizing the party made a list of persons who could attend, prioritizing the persons who had paid in prior years, and excluding many who had not.

20.     Because a number of Jewish employees and persons of other religions who did not observe Christmas had elected not to pay to attend the holiday party in prior years, the committee's policy led to their exclusion from a party being held on CUNY-HUNTER COLLEGE's premises for its employees.

21.     Defendants SHARON NEILL and THERESA MATIS acted under color of the laws of New York.

22.     Defendants NEILL's and MATIS's actions and failure to act deprived Plaintiff of his right to not have his public employer promote a religious belief and subject him to working in a religiously hostile work environment, in violation of his rights under the First and Fourteenth Amendments to the United States Constitution.

23.     Defendants' actions and failure to act caused Plaintiff to experience emotional distress, anxiety, pain and suffering.

24.     Plaintiff is entitled to a right to redress for the violation of his rights pursuant to 42 U.S.C. § 1983.

As a Second Cause of Action

25.     Plaintiff repeats and realleges as if stated here in full ¶¶ 1-24 of this Complaint.

26.     On or about April 1, 2005 Plaintiff received an evaluation from Defendant MATIS, his supervisor at CUNY-HUNTER COLLEGE which contained the derogatory allegation that he did not get along with his fellow employees and needed improvement in attitude and manner.

27.     Plaintiff sought a meeting to clarify why his personnel evaluation had included these negative comments. On or about June 20, 2005, a meeting was held, attended by Plaintiff, his supervisor, Defendant MATIS, Defendant NEILL, Maria Holder from CUNY-HUNTER COLLEGE's Human Resources Department, and Jennifer Doss-Sagnelli, a co-worker of Plaintiff.

28.     At that meeting, Defendants MATIS and NEILL asserted that Plaintiff did not get along with Tom Crowfis.

29.     Plaintiff reiterated that his complaints did not have to do with personal feelings about Mr. Crowfis but with the display of Christian religious objects in the office of a public university.

30.     The day after this meeting, Defendant MATIS wrote to Defendant NEILL detailing instances of behaviors by Plaintiff and requested that Plaintiff be transferred to a different assignment elsewhere at CUNY-HUNTER COLLEGE. The letter was critical of Plaintiff for leaving work up to five minutes early at the end of most days.

31.     Until Plaintiff's complaint about the display of religious objects by Tom Crowfis at the June 20, 2005 meeting, the alleged conduct of Plaintiff had not resulted in an initiative to transfer him. Plaintiff's complaint at the June 20th meeting was a motivating factor for his transfer.

32.     CUNY-HUNTER COLLEGE's personnel practices, pursuant to the New York State Civil Service Law, and regulations thereunder, and under its collective bargaining

agreement with District Council 37 of the American Federation of State County and Municipal Employees, disciplinary actions were not to be taken based on statements about an employee unless the employee was first shown the statements and given an opportunity to respond to them.

33. The statements by Defendant MATIS were sent to Defendant NEILL, and the transfer of Plaintiff effectuated, without his ever having been told of these allegations or being given an opportunity to respond to them.

34. On or about September 1, 2005, less than four months after the meeting at which he had complained about the display of Christian religious objects, Plaintiff was informed by Defendant NEILL that he was being transferred to the Business Office Accounting Department from the position that he had held in the Bursar's Office for the seven years since commencing employment at CUNY-HUNTER COLLEGE.

35. When Plaintiff voiced to Defendant NEILL his objection to this transfer, she responded "I can do with you what I want."

36. Following Plaintiff's transfer to the Business Office Accounting Department, he was directed by Defendant LIVIA CANGEMI, the Director of the Department, to do work with the Excel computer program, which he had never used before, without receiving adequate training in Excel.

37. At the same time, Plaintiff heard from his co-workers in the Business Office Accounting Department that Defendant CANGEMI was asking them about his attitude and if he was able to perform his duties and operate the Excel program.

38. On or about September 27, 2005, Plaintiff wrote to the Assistant to Defendant LAURA SCHACTER, the CUNY-HUNTER COLLEGE Dean for Diversity and Compliance, requesting that he be transferred back to his old position as a reasonable accommodation of his disability, and asserting that his transfer had been in retaliation for his complaining about the display of religious items.

39. By letter dated November 11, 2005, over the signature of Jennifer Raab, the President of CUNY-HUNTER COLLEGE, Plaintiff was informed that his allegations of discrimination had been investigated and it had been found that there was no evidence of a violation of CUNY-HUNTER COLLEGE's policies against discrimination.

40. By its actions in investigating Plaintiff's claims, and then, allowing discrimination against Plaintiff to continue while on notice of the discrimination against Plaintiff on the basis of religion and because of his exercise of First Amendment rights, Defendant CUNY-HUNTER COLLEGE became personally involved in sanctioning the discriminatory practices, and in ratifying their continuation.

41. On or about November 17, 2005, Plaintiff attempted to take photographs of the

Christian religious items on display in the Bursar's office through a window that students use outside the Bursar's office.

42.    On or about November 18, 2005, Plaintiff was summoned to the Human Resources office to see Defendant ROBERT MCGARRY Director of Human Resources at CUNY-HUNTER COLLEGE and Marie Holder.  There, MCGARRY berated Plaintiff in a loud and belligerent tone, and told him that there had been complaints concerning Plaintiff's attempts to take photos from outside the Bursar's office, and that until MCGARRY completed his investigation of Plaintiff's conduct, Plaintiff was not to go near the area of the Bursar's office.

43.    On or about November 18, 2005, Plaintiff received a written directive from Defendant ROBERT MCGARRY, prohibiting him from going near the area of the Bursar's office, pending a meeting to investigate his conduct. However, this meeting has never been scheduled by the Human Resources Department, nor has Plaintiff heard anything further from the Human Resources Department about the matter.

44.    On or about December 14, 2005, Plaintiff went to the area outside the Bursar's office to give a colleague a written request for contributions to distribute to her co-workers in the Bursar's office for a former CUNY-HUNTER COLLEGE employee who was in the US Army flying into and out of Iraq.

45.    On or about December 14, 2005, Plaintiff received an oral and written reprimand from Defendant LIVIA CANGEMI, for his having gone near the Bursar's office.

46.    In or about January, 2006, Plaintiff's accounting work was taken from him and he was given a clerical assignment to work on, putting a large volume of forms in numerical order, and was made to sit at a table in the middle of the room working on this task.  When a work-study student who was familiar with this task offered to help Plaintiff, Defendant CANGEMI rejected this offer.

47.    During the months from September, 2005 to January, 2006, Plaintiff was subjected to harsh and unfair criticism by Defendant CANGEMI.

48.    At the end of January, 2006, Defendant CANGEMI gave Plaintiff an evaluation marked "special", (as distinct from the alternative "annual" evaluation for non-probationary employees) for the four month period he had been working under her supervision.

49.    This evaluation was highly negative, giving Plaintiff negative ratings in five of the six categories, "Productivity," "Relationships with Others," "Work Habits," "Job Knowledge," and "Promotability," with every possible negative attribute on the form checked in each of these five categories.  In addition, an attachment to the evaluation singled out Plaintiff for often making personal phone calls and speaking loudly, and for conducting personal business during business hours, when Defendant CANGEMI  did not object to the conduct of other employees who engaged in making personal phone calls, spoke loudly and/or conducted

personal business during business hours. The evaluation also criticized Plaintiff for frequently leaving for doctor's appointments, although it admitted that Plaintiff provided notes for most of these absences.

50.	The narrative section of the evaluation also contained statements about Plaintiff which Defendant CANGEMI knew to be false. For instance, the evaluation alleged that Plaintiff had been unwilling to take further courses in Excel, when in fact, Plaintiff had expressed his opinion to Defendant Cangemi that such courses were not the answer to his need to learn Excel better, but that if she wanted him to take them, he would do so.

51.	A short time later, Plaintiff enrolled in a course in Excel on his own time and at his own expense.

52.	Upon information and belief, at or about the time of his transfer to her supervision, Defendant CANGEMI had been directed by Defendant NEILL to document Plaintiff's alleged shortcomings as a prelude to terminating his employment.

53.	Upon information and belief, Defendants only turned away from the course of terminating Plaintiff's employment only after he filed a discrimination/reprisal charge with the United States Equal Employment Opportunity Commission.

54.	The actions and failure to act of Defendants NEILL, CANGEMI, MCGARRY and SCHACTER constituted retaliation against Plaintiff for his opposition to First Amendment violations, and for his exercise of his First Amendment protected right to speak about a matter of public concern, the display of religious objects in a public facility.

55.	At all times mentioned herein, Defendants NEILL, CANGEMI, MCGARRY and SCHACTER acted under color of the laws of New York.

56.	Defendants' actions and failure to act caused Plaintiff to experience emotional distress, anxiety, pain and suffering, and compelled Plaintiff to take a month's sick leave from work, causing him economic loss.

57.	Plaintiff is entitled to redress for the violation of his rights pursuant to 42 U.S.C. § 1983.

As a Third Cause of Action

58.	Plaintiff repeats and realleges as if stated here in full ¶¶ 1-57 of this Complaint.

59.	Plaintiff's letter of September 27, 2005 was also addressed to Defendant TAMARA GREEN, the CUNY-HUNTER COLLEGE 504/ADA co-ordinator and requested the return to his former position as a reasonable accommodation of his disability.

60.	President RAAB's letter, written on behalf of Defendant CUNY-HUNTER

COLLEGE, did not respond to Plaintiff's request for a reasonable accommodation, nor did Plaintiff receive any response to this letter from Defendant TAMARA GREEN.

61. On or about January 19, 2006, Plaintiff again wrote to Defendant GREEN, again requesting a reasonable accommodation of his disability, and enclosing a letter from his psychiatrist.

62. Plaintiff again received no response from Defendant GREEN or from anyone else on behalf of Defendant CUNY-HUNTER COLLEGE to this letter.

63. On or about March 1, 2006, Plaintiff wrote to Defendant GREEN, with a copy to Defendant ROBERT MCGARRY, the Director of CUNY-HUNTER COLLEGE's Human Resources Department, again requesting a reasonable accommodation for his disability.

64. On or about May 1, 2006, Plaintiff received a response to this letter from Defendant MCGARRY. This response came more than eight months after Plaintiff had first written to request a reasonable accommodation from Defendant CUNY-HUNTER COLLEGE. The response enclosed Plaintiff's job description and requested additional information about Plaintiff's disability from Plaintiff's psychiatrist.

65. Defendant MCGARRY, acting on behalf of Defendant CUNY-HUNTER COLLEGE, responded to Plaintiff's request for a reasonable accommodation only after the EEOC had contacted Defendant CUNY-HUNTER COLLEGE to investigate Plaintiff's charge of disability discrimination.

66. At that time, Plaintiff withdrew his request for an accommodation, because he felt that it was not necessary at that time.

67. At all times mentioned herein, Defendant CUNY-HUNTER COLLEGE has been a recipient of federal funds.

68. Defendants' actions and failure to act caused Plaintiff to experience emotional distress, anxiety, pain and suffering, and compelled Plaintiff to take a month's sick leave from work, causing him economic loss.

69. Defendant CUNY-HUNTER COLLEGE's denial of Plaintiff's request for a reasonable accommodation deprived him of rights secured by the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq.

70. Defendant CUNY-HUNTER COLLEGE acted and failed to act with respect to Plaintiff's request for reasonable accommodation with a reckless disregard and deliberate indifference to his rights as a person with a disability, based on hostility toward persons with disabilities in the exercise of their rights.

As a Fourth Cause of Action

71. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-70 of this Complaint.

72. On or about January 23, 2006, Plaintiff filed a charge of disability discrimination against Defendant CUNY-HUNTER COLLEGE with the United States Equal Employment Opportunity Commission.

73. On or about June 1, 2006, the EEOC issued a Right to Sue letter.

74. This action is timely commenced within ninety days of Plaintiff's receipt of the Right to Sue letter.

75. Defendants' actions and failure to act constituted employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., for which Defendants NEILL and MCGARRY are liable for injunctive relief in their official capacities.

### As a Fifth Cause of Action

76. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-75 of this Complaint.

77. As noted above, Defendant MATIS's June, 2005 letter to Defendant NEILL which resulted in Plaintiff's transfer complained of Plaintiff leaving work a few minutes early, and the evaluation he received from Defendant Cangemi criticized his taking time away from work, even when these absences were excused because of medical appointments.

78. Tom Crowfis, as a member of his church's bereavement committee, frequently took time away from his job without loss of pay or leave time, to pursue his church's committee function. Upon information and belief, Crowfis took this time without obtaining permission from Defendants.

79. The surroundings in which Plaintiff was required to work, while under the supervision of Defendant MATTIS, with religious statuary at eye level from his work area, and not within Tom Crowfis's own cublcle, subjected Plaintiff to a religiously hostile work environment.

80. Plaintiff's charge to the EEOC included an allegation that he had been discriminated against based upon religion, and in retaliation for his opposition to religious discrimination.

81. The EEOC's Right to Sue letter encompassed this charge of discrimination.

82. Defendant CUNY-HUNTER COLLEGE's actions and failure to act constituted employment discrimination on the basis of religion in violation of 42 U.S.C. § 2000e, et seq.

### As a Sixth Cause of Action

83. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-82 of this Complaint.

84.     The actions of Defendants and failure to act of NEILL, MATIS, CANGEMI, MCGARRY and SCHACTER discriminated against Plaintiff on the basis of religion, subjecting him to a religiously hostile work environment, and retaliated against him for opposition to these actions and opposition to the promotion of religion by a government institution, in violation of Plaintiff's rights guaranteed by the New York State Constitution Article 1, paragraphs 3 and 8 to be free of religious discrimination, and retaliation for opposition to discrimination and to violation of separation of church and state.

As a Seventh Cause of Action

85.     Plaintiff repeats and realleges as if stated here in full ¶¶ 1-84 of this Complaint.

86.     The actions and failure to act of Defendants CANGEMI, MCGARRY, SCHACTER and GREEN constituted aiding and abetting discrimination based on disability in violation of the New York State Human Rights Law, New York State Executive Law § 296.

As an Eighth Cause of Action

87.     Plaintiff repeats and realleges as if stated here in full ¶¶ 1-86 of this Complaint.

88.     The actions and failure to act of Defendants NEILL, MATIS, CANGEMI, MCGARRY and SCHACTER constituted aiding and abetting discrimination based on creed in violation of the New York State Human Rights Law, New York State Executive Law § 296.

As a Ninth Cause of Action

89.     Plaintiff repeats and realleges as if stated here in full ¶¶ 1-88 of this Complaint.

90.     The actions and failure to act of Defendants CANGEMI, MCGARRY, SCHACTER and GREEN constituted aiding and abetting discrimination based on disability in violation of the New York City Human Rights Code, §§ 8-101 et seq.

As a Tenth Cause of Action

91.     Plaintiff repeats and realleges as if stated here in full ¶¶ 1-90 of this Complaint.

92.     The actions and failure to act of Defendants MATIS, NEILL, CANGEMI, MCGARRY, and SCHACTER constituted aiding and abetting discrimination based on creed in violation of the New York City Human Rights Code, §§ 8-101 et seq.

93.     Wherefore, Plaintiff demands judgment against Defendants NEILL and MATIS on his first cause of action, against Defendants NEILL, MATIS, CANGEMI, MCGARRY, and SCHACTER on his Second, Sixth, Seventh, Eighth, Ninth and Tenth causes of action, and against Defendant GREEN on his Seventh and Ninth causes of action, in the amount of five-

hundred thousand dollars in compensatory damages and one-hundred thousand dollars each in punitive damages, against Defendant CUNY-HUNTER COLLEGE in the amount of five-hundred thousand dollars in compensatory damages on his Third and Fifth causes of action, and on his First through Tenth causes of action an injunction against Defendants in their official capacities requiring that Plaintiff be restored to the position from which he was transferred, and/or provided with a reasonable accommodation, and that the derogatory evaluations be expunged from his personnel records, and that Defendants cease and desist from promoting religion and from discriminating on the basis of creed or religion, together with an award of reasonable attorney's fee, costs, and such further, other and different relief as this Court deems just in the premises.

                                                  Yours, etc.

                                                  Aaron David Frishberg (AF 6139)
                                                  Attorney for Plaintiff
                                                  116 W. 111th Street
                                                  New York, NY 10026
                                                  212 740 4544

### JURY DEMAND

Plaintiff hereby demands trial by jury of all issues triable by jury.

                                                  _____
                                                  Aaron David Frishberg (AF 6139)