UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————————— X

HERMAN MENES,

                    Plaintiff,

                                                    **DEFENDANTS' LOCAL**
                                                    **CIVIL RULE 56.1**
        - against -                                 **STATEMENT**

CUNY-HUNTER COLLEGE, SHARON NEILL,                  06 Civ. 6358 (RJH)
THERESA MATIS, LIVIA CANGEMI,
LAURA SCHACTER, ROBERT MCGARRY, and
TAMARA GREEN,

                    Defendants.
—————————————————————————— X

    Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern

District of New York, defendants the City University of New York ("CUNY") (s/h/a "CUNY-

Hunter"), Sharon Neill, Theresa Matis, Livia Cangemi, Laura Schacter Hertzog (s/h/a "Laura

Schacter"), Robert McGarry, and Tamara Green,[1] by their attorney ANDREW M. CUOMO, the

Attorney General of the State of New York, hereby submit a statement of the material facts as to

which they contend that there is no genuine issue to be tried.

    1.    Plaintiff has been employed by Hunter College, a CUNY senior college, as a

College Accountant since 1998. Menes Dep. at 14, 129-30.

    2.    Plaintiff was first assigned to Hunter's Financial Aid Processing Center

("FAPC"). *Id.* at 14. He was later reassigned to Hunter's Bursar's Office in 2002, *id.* at 17, and to

its Accounting Department in 2005, *id.* at 119.

---

[1] Complete transcripts of plaintiff's deposition and those of other parties are attached to the Declaration of
Aron Fischer. Plaintiff's deposition transcript is attached as Exhibit C; defendant Theresa Matis's as Exhibit D;
defendant Livia Cangemi's as Exhibit E; defendant Sharon Neill's as Exhibit F; and defendant Laura Schacter
Hertzog's as Exhibit G.

3.      At the time plaintiff was reassigned to the Bursar's Office in 2002, Matthew

LoCurto was Hunter's Bursar. Menes Dep. at 17, 19. Defendant Theresa Matis became Bursar in

October 2003. Matis Decl. ¶ 1. Defendant Livia Cangemi was Director of the Accounting        .

Department from the time plaintiff was reassigned there in September 2005 until the present.

Menes Dep. at 119; Cangemi Decl. ¶ 5.

4.      Defendant Sharon Neill is Hunter's Director of Business Services, Neill Dep. at 7,

and defendant Robert McGarry is Hunter's Director of Human Resources, Green Decl. ¶ 9.

Defendant Laura Schacter Hertzog is Hunter's former Dean of Diversity and Compliance and

Special Assistant to the President for Campus Relations. Hertzog Dep. at 7.

**Conflicts with Co-Workers at the Bursar's Office**

5.      In June 2002, plaintiff became "upset" at Tom Crowfis, his new supervisor at the

Bursar's Office, for an alleged delay in giving him a key to the office and the men's room. Menes

Dep. at 21-23.  He submitted a memorandum to Mr. Crowfis and Matthew LoCurto complaining

about the delay. *Id.* Ex. A.

6.      In July 2002, plaintiff accused Mr. Crowfis of throwing a key ring at him and

hitting him in the wrist. *Id.* at 24-26. He submitted a written complaint about the incident and

documentation of an X-ray of his wrist to Matthew LoCurto. *Id.* Ex. B.

7.      In late 2002 or early 2003, plaintiff refused to tell Mr. Crowfis about his plans for

getting to work in the event of a transit strike. *Id.* at 26-28. Mr. Crowfis submitted a written

complaint to Mr. LoCurto about the incident. *Id.* at 28.

8.      In January 2003, following a disagreement about the distribution of financial aid

checks to students, plaintiff submitted a complaint to Sharon Neill, Hunter College's Director of

2

Business Services, complaining about Mr. Crowfis's "[h]arassment." Menes Dep. at 28-31 & Ex. C.

9.      By January 2003, plaintiff's relationship with Mr. Crowfis had become "guarded." *Id.* at 32.

10.      Plaintiff repeatedly complained to defendant Theresa Matis, who became Hunter's Bursar in October 2003, that Mr. Crowfis talked loudly on the telephone. Menes Dep. at 38-39; Matis. Decl. ¶ 5.

11.      In March 2004, plaintiff submitted a written complaint to Ms. Matis stating that Mr. Crowfis had created a "hostile work environment" by accusing plaintiff and other employees of falsely reporting the time they arrived at work. Menes Dep. at 101-104 & Ex. F.

12.      In response to these recurring conflicts between plaintiff and Mr. Crowfis, on April 16, 2004, Ms. Matis removed plaintiff from Mr. Crowfis's supervision and asked plaintiff to report directly to her. *Id.* at 33-34; Matis Decl. ¶ 4 & Ex. B.

13.      In the course of a disagreement with co-worker Jennifer Sagnelli over filling out financial aid disbursement forms, plaintiff told Ms. Sagnelli, a College Accounting Assistant, that his job title was higher than hers. Menes Dep. at 39-40. Ms. Sagnelli complained to Ms. Matis about the incident. *Id.*; Matis Decl. ¶ 10.

14.      Plaintiff "used to joke" with co-worker Joseph D'Auria that Mr. D'Auria did not do enough work, which prompted Mr. D'Auria to complain to Ms. Matis as well. Menes Dep. at 41-42; Matis Decl. ¶ 10.

15.      Plaintiff also complained to Ms. Matis about Tom Crowfis's display of religious figurines on his cubicle ledge in the Bursar's Office. Menes Dep. at 32-33, 50-53, 70.

3

**2004 Performance Evaluation**

16.     On or about April 1, 2005, Ms. Matis gave plaintiff his evaluation for the period
of January 1 to December 31, 2004. Matis Decl. Ex. D. The evaluation assigned plaintiff an
overall "satisfactory" rating but stated that plaintiff "[n]eeds improvement in attitude and
manner." *Id.*

17.     Plaintiff asked Ms. Matis to remove this comment from his evaluation. Menes
Dep. at 113; Matis Decl. ¶ 14 & Ex. E.  He did not mention Tom Crowfis or religious displays to
Ms. Matis at that time. *Id.*

18.     Plaintiff requested a meeting with defendant Sharon Neill, which took place on
June 20, 2005 and was attended by plaintiff, Ms. Neill, Ms. Matis, Jennifer Sagnelli (a union
representative), and Maria Holder (an assistant to the director of Human Resources at Hunter).
Menes Dep. at 114-15.

19.     At the meeting, plaintiff requested the names of co-workers with whom he was
accused of having conflicts. Green Decl. Ex. A. When Ms. Matis identified Tom Crowfis,
plaintiff replied that his conflicts with Mr. Crowfis regarded Mr. Crowfis's religious displays. *Id.*

20.     At the conclusion of the meeting, Ms. Neill refused to remove the negative
comment from plaintiff's evaluation, but plaintiff was informed that he entitled to file a written
rebuttal. Matis Decl. ¶ 15.

**Reassignment to the Accounting Department**

21.     The Bursar's Office  is responsible for collecting all tuition and fees from Hunter
students, distributing student financial aid checks, and providing customer service to Hunter's
student body of 21,000. Matis Decl. ¶ 3. It is a fast-paced and interactive work environment that

4

requires cooperation and teamwork from its employees. *Id.* ¶ 11.

22.     Plaintiff was the only non-supervisory employee in the Bursar's Office with the title of College Accountant. *Id.* ¶ 10-11. All other non-supervisory employees had lower titles than plaintiff. *Id.* ¶ 11.

23.     On June 21, 2005, Ms. Matis wrote an email to Ms. Neill requesting that plaintiff be reassigned. Ms. Matis stated in the email:

> It is critical that my staff work together to provide quality service to students. This means that EVERYONE must be a team player and do whatever it takes to get the job done when the office is busy. I am hoping that you will consider re-assigning [plaintiff] to another area where he could use his "accounting skills" more and work in a quiet environment where there is little conversation and less pressure to deal with students.

Matis Dep. Ex. F.

24.     During the summer of 2005, Hunter's Accounting Department, of which defendant Livia Cangemi is the director, was taking on new duties with respect to tuition fees and scholarships that increased its staffing demands. Cangemi Dep. at 8-9; Neill Dep. at 19.

25.     The work environment at the Accounting Department is independent and project-based, with most employees working individually on extended accounting tasks and not providing customer service to Hunter's student body. Cangemi Decl. ¶ 3.

26.     In response to Ms. Matis's request and the increased staffing demands at the Accounting Department, Ms. Neill decided to reassign plaintiff to the Accounting Department effective September 1, 2005. Neill Dep. at 17-19.

27.     Following his departure from the Bursar's Office, plaintiff's responsibilities were reassigned to a CUNY Office Assistant in the Financial Aid Processing Center. Matis Decl. ¶ 18;

5

Menes Dep. at 126. CUNY Office Assistant is a lower title than plaintiff possesses. Matis Decl. ¶
18.

**Performance at the Accounting Department**

28.    Upon plaintiff's arrival at the Accounting Department, defendant Livia Cangemi
asked him to perform a bank reconciliation using the Microsoft Excel computer program. Menes
Dep. at 131-32. Plaintiff was not able to complete it because he did not know how to use Excel.
*Id.* at 132-33.

29.    Ms. Cangemi was, in plaintiff's word, "flabbergasted" that plaintiff did not know
Excel. *Id.* at 127; Cangemi Decl. ¶ 6. She asked plaintiff to take a free school-sponsored course
on the program, but after attending one class, plaintiff told Ms. Cangemi that he did not find it
helpful, and declined her suggestion that he take further classes. Menes Dep. at 133-34; Cangemi
Decl. ¶ 7.

30.    Throughout the fall of 2005, Ms. Cangemi gave plaintiff ever simpler assignments
in the hopes of finding some task that he could perform successfully. Menes Dep. at 133;
Cangemi Decl. ¶ 8.

31.    Based on her own observations and the feedback of several Accounting
Department employees who assigned him work, Ms. Cangemi concluded that plaintiff was
uncooperative upon receiving work assignments, took excessive amounts of time to complete
them, and made so many errors that his work routinely had to be redone. Cangemi Decl. ¶ 8. On
January 31, 2006, Ms. Cangemi gave plaintiff a special evaluation indicating that his
performance was unsatisfactory in these areas. *Id.* Ex. B.

32.    The decision to give plaintiff a special evaluation was consistent with CUNY

6

policy and practice, under which special evaluations are used to notify underperforming

employees quickly that their performance needs improvement. *Id.* ¶ 10.

33.    Early in 2006, Ms. Cangemi assigned plaintiff to receive assignments exclusively

from Kathleen Griffith. Menes Dep. at 141. Working with Ms. Griffith reduced plaintiff's stress

level. Menes Dep. at 141-42.

**Establishment Clause Claim**

34.    Tom Crowfis kept figurines of angels on the ledge of his cubicle. Menes Dep. at

51-52. The figurines were confined to the ledge of Mr. Crowfis's cubicle and no similar objects

were displayed elsewhere at the Bursar's Office. Menes Dep. at 65-66.

35.    It has always been Bursar's Office policy to allow staff to decorate their cubicles

with religious or non-religious items as they see fit. Matis Decl. ¶ 8. Theresa Matis never asked

any employee at the Bursar's Office to remove any decoration from his or her cubicle. *Id.*

36.    A Christmas tree and holiday posters were displayed at the Bursar's Office around

Christmas, St. Patrick's Day and Thanksgiving. Menes Dep. at 52-55. None of these decorations

depicted a cross, a church, or a saint, or any other religious message. *Id.* at 54-55, 59-60.

37.    Hunter held an annual holiday party in December. *Id.* at 84-85. Plaintiff attended

the party at least once but at some point chose not to attend again. *Id.* at 86-87. There were no

religious activities at the party. *Id.* at 90.

**Retaliation Claim**

38.    Plaintiff did not complain about religious displays at the Bursar's Office prior to

Theresa Matis's arrival in October 2003. Menes Dep. at 33.

39.     Theresa Matis was "nonchalant" upon hearing plaintiff's complaints about religious displays in the Bursar's Office. Menes Dep. at 70. Ms. Matis reported plaintiff's complaints to Ms. Neill. *Id.* at 73; Matis Decl. ¶ 8. In response, Ms. Neill ascertained that the religious displays were in accordance with Hunter College policy. Menes Dep. at 73; Matis Decl. ¶ 8.

40.     Plaintiff's documented conflicts with co-workers over non-religious issues were, at a minimum, part of the reason for the comment in his 2004 performance evaluation that he needed improvement in attitude and manner. Menes Dep. at 169-70.

41.     At the Accounting Department, plaintiff received a single clerical assignment, which he worked on for fewer than five days. Menes Dep. at 142-47.

42.     In November and December 2005, plaintiff made unauthorized trips to the Bursar's Office during business hours. Menes Dep. at 147-51. Plaintiff was required to ask permission prior to making the trips to the Bursar's Office and agreed after the fact that he should have asked for permission. *Id.* Ex. H.

**Disability Discrimination Claims**

43.     On September 27, 2005, plaintiff submitted a complaint to, among others, defendant Professor Tamara Green requesting, "if necessary," an accommodation for a disability. Green Decl. Ex. A.

44.     In October 2005, plaintiff met with Professor Green to discuss his accommodation request. Menes Dep. at 186-90 & Ex. J; Green Decl. ¶ 4 & Ex. B. At the meeting, Prof. Green told plaintiff that in order for his request to be resolved he would need to submit a letter from his doctor documenting the nature of his disability and its effect on his ability to perform his work.

8

Green Decl. ¶ 7; Menes Dep. at 190-92 & Ex. K.

45.     In late November 2005, plaintiff gave Professor Green a letter from his psychiatrist, Dr. Carolyn Rodriguez, stating only that plaintiff was "under [her] care." Menes Dep. Ex. K & 194-95. Professor Green responded that she needed more information than this to evaluate plaintiff's accommodation request. Green Decl. ¶ 7; Menes Dep. at 198-99.

46.     On January 19, 2006, plaintiff submitted another letter from Dr. Rodriguez, which said that plaintiff was being treated for "Adjustment disorder with depressed mood and anxiety" but again did not address how the condition was affecting his work or what accommodation might be appropriate. *Id.* Ex. L; Green Decl. ¶ 8. Professor Green again explained that in order to address plaintiff's request Hunter would need that additional information. *Id.*; Menes Dep. at 200.

47.     Plaintiff did not provide further information, but renewed his request for an accommodation in a letter of March 1, 2006, which stated that he would prefer to be reassigned but that if he must remain at the Accounting Department he needed "additional time to learn the job, respectful treatment by [his] supervisor, and no harassment." *Id.* Ex. M.

48.     Defendant Robert McGarry responded to plaintiff's March 1 letter on May 1, 2006, explaining that plaintiff needed to provide a letter that "fully describes your disability and related work limitations as well as major life activity limitations." *Id.* Ex. N.

49.     Plaintiff responded by withdrawing his request for an accommodation, stating that it was no longer necessary at the time. Menes Dep. at 204-05.

**Religious Discrimination Claims**

50.     Throughout the period in which plaintiff worked at the Bursar's Office, Tom

9

Crowfis regularly requested annual leave time in short increments, and, though he was not required to specify his reasons for taking leave, would sometimes state that the reason for his request was to attend a funeral. Matis Decl. ¶ 7 & Ex. C; Menes Dep. at 215-16.

51.     Plaintiff never had a request for leave time denied while working at the Bursar's Office. Menes Dep. at 208.

52.     Plaintiff never asked to take leave time for religious activities while working at the Bursar's Office. *Id.* at 217.

53.     Plaintiff had no involvement in the process for hiring work-study students at the Bursar's Office and does not know whether any Muslim students ever applied for or were rejected for positions at the Bursar's office. *Id.* at 81-82.

Dated:   August 16, 2007
(New York, New York)

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants

By:

Aron Fischer (AF 6719)
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
Aron.Fischer@oag.state.ny.us
(212) 416-8655

10